UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SARA BENDER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:19-cv-04694-TAB-RLY ) |
| AVON COMMUNITY SCHOOL CORPORATION, AVON EDUCATION FOUNDATION, | ) ) ) ) |
| Defendants. | ) ) |

**ORDER ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

## I. Introduction

Plaintiff Sara Bender served as the Executive Director of Defendant Avon Education Foundation from August 2017 until December 2019, when the Foundation terminated her employment. Bender alleges that the Foundation and Defendant Avon Community School Corporation were her joint employers. She claims Defendants violated the FMLA and Title VII and retaliated against her for requesting FMLA leave and due to her gender. Defendants jointly filed a motion for summary judgment [Filing No. 85], arguing they are entitled to judgment as a matter of law on all of Bender's claims. Unfortunately, Bender did not include a proper statement of material facts in dispute with her response, as required by S.D. L.R. 56-1. Making matters worse, Bender misrepresents evidence offered in support of her claims. By ignoring and failing to properly address a large portion of the facts Defendants presented, Bender has conceded many material facts, thereby establishing that the Foundation terminated her due to her unprofessional behavior.

A large portion of Defendants' argument relates to a threshold issue: whether either Defendant was a covered employer under the FMLA or Title VII. As discussed below, the Foundation is entitled to summary judgment because it only has one employee. Thus, it is not a covered employer under the FMLA or Title VII. Whether the School jointly employed Bender is a question of fact, and these facts are enough in dispute to preclude summary judgment on this basis. However, even if the School jointly employed Bender, other uncontested facts demonstrate she did not request FMLA leave, and that Bender was not discriminated against because of her gender. Therefore, Defendants' motion for summary judgment [Filing No. 85] is granted.

## II. Background[1]

From August 2017 until December 3, 2019, Bender was the Executive Director of the Avon Education Foundation, and the Foundation's sole employee. [Filing No. 89-1, at ECF p. 3.] The Foundation is a public school foundation formed under Indiana Code 20-26-5-22.5. [Filing No. 89-2, at ECF p. 1.] The Foundation is a separate entity from the Avon Community School Corporation, with a separate governing board. [Filing No. 89-1, at ECF p. 9.] The sole purpose of the Foundation is to support the School Corporation. [Filing No. 89-2, at ECF p. 1.] The School Corporation, by contrast, is a public school corporation formed under Indiana Code 20-23-4 that is governed by a five-member elected board. [Filing No. 89-4, at ECF p. 1.]

---

[1] Contrary to S.D. Ind. L.R. 56-1, Bender did not include a Statement of Material Facts in Dispute in her response brief. Rather, Bender gave her argument section this label without setting forth a specific section containing the material facts she disputes, as required by the local rules. Thus, while at the summary judgment stage the Court construes the facts in the light most favorable to the non-moving party, Bender's failure to follow the local rules effectively means that Bender has conceded the bulk of these background facts, unless otherwise noted. *See generally Farmer v. Town of Speedway*, 62 F. Supp. 3d 842, 846 (S.D. Ind. 2014) ("In sum, the parties are cautioned that compliance [with] the Local Rules and this Court's practices is mandatory, and there can be serious consequences for non-compliance.").

While employed as Executive Director, Bender reported trouble in her interactions with then-President of the Foundation, Angela Lee. [Filing No. 89-3, at ECF p. 7.] However, Bender repeatedly refused to turn over evidence related to her conflict with Lee. [Filing No. 89-3, at ECF p. 14.] In addition, Bender referred to people as "shitheads" in communication with a Foundation board member; repeatedly made disparaging comments about Foundation board members; insinuated that a board member bribed another member; described her interactions with Foundation board members as "amateur hour"; and misrepresented her relationship with a potential Foundation board member to whom Bender disclosed internal Foundation communications and disparaged board members. [Filing No. 89-1, at ECF p. 21-23, 31; Filing No. 89-15, at ECF p. 2; Filing No. 89-7, at ECF p. 12-13.]

On March 11, 2019, Bender shared a doctor's note with the Foundation, written on a prescription sheet, which stated: "Pt. shouldn't be working more than 40 hours per week on a routine basis." [Filing No. 94-5, at ECF p. 1.] Four days later, she emailed Foundation board member Jamie Turner advising her that she was "at over 45 hours since Sunday and over 120 since March 1" and that she had planned to take the day off. [Filing No. 89-12, at ECF p. 2.] Turner replied with her understanding that Bender was supposed to be getting support from her interns, but that ultimately "it's your responsibility." Turner stated that moving forward, she would need time logs and to know in advance Bender's vacation days. She asked for logs every Friday morning and for Bender to email her when she was at 30 hours. [Filing No. 89-12, at ECF p. 2.] Bender described Turner's response as micromanaging and giving her additional tasks by asking for weekly time logs. [Filing No. 89-1, at ECF p. 14-15.]

Bender attended a meeting on November 8, 2019, with Shane Sommers and two other board members, who investigated Bender's allegations regarding her working relationship with

Lee. [Filing No. 89-1, at ECF p. 39.] Bender heard Sommers make sexist comments about women at that hearing. [Filing No. 89-1, at ECF p. 37.] Specifically, Bender testified that Sommers made a comment about a woman working at AutoZone and stated that this made him embarrassed, so he sends his wife there now instead. [Filing No. 89-1, at ECF p. 37.] At the meeting, Bender interjected when Sommers spoke and asked why he was talking. Sommers described the interruption as hostile and asked why she was taking such a hostile tone. Bender unilaterally announced that the meeting was terminated and left. [Filing No 89-1, at ECF p. 38-39.] That same day, Sommers notified Bender that since the meeting had ended without finishing the discussion, and due to the nature of her reaction, she would be placed on paid administrative leave until the Foundation board had time to discuss the matter further. [Filing No. 89-3, at ECF p. 23; Filing No. 89-18, at ECF p. 1.]

In a letter to Bender dated November 27, 2019, the Foundation stated that it placed Bender on administrative leave because of her unprofessional conduct in interactions with board members, inappropriate comments about board members, and failure to provide passwords and account information. [Filing No. 89-18, at ECF p. 1.] Dr. Margaret Hoernemann, an ex officio, non-voting member of the Foundation board, reviewed a draft of this letter and provided editorial assistance, but she was not involved in the decision to place Bender on leave and did not authorize sending the letter. [Filing No. 89-7, at ECF p. 12-14.] On December 3, 2019, the Foundation terminated Bender. [Filing No. 89-1, at ECF p. 5; Filing No. 89-19, at ECF p. 1.]. The Foundation's stated reason for firing her was "a loss of confidence in you as a result of your unprofessional conduct." [Filing No. 89-19, at ECF p. 1.]

Meanwhile, Bender filed the underlying complaint in this matter on November 26, 2019, alleging that Defendants violated the FMLA and took actions in retaliation for Bender seeking

4

FMLA leave. [Filing No. 1.] Bender later amended her complaint to include both FMLA and Title VII claims against Defendants. [Filing No. 67.] On March 19, 2021, Defendants filed their joint motion for summary judgment, which now pends. [Filing No. 85.]

### III. Discussion

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the facts and draw all reasonable inferences in the light most favorable to Bender, the non-moving party. *See, e.g., Driveline Sys., LLC v. Artic Cat, Inc.*, 936 F.3d 576, 579 (7th Cir. 2019). "A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Speculation is not sufficient to survive summary judgment; there must be evidence." *Khungar v. Access Community Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021) (internal citations and quotation marks omitted).

#### A. Applicability of FMLA and/or Title VII

As a threshold matter, Defendants contend that the Foundation is entitled to summary judgment because it is not a covered employer under either the FMLA or Title VII. In addition, Defendants contend that both the Foundation and School Corporation are entitled to summary judgment because they were neither a joint nor integrated employer of Bender. [Filing No. 89, at ECF p. 10.] To qualify as an employer under the FMLA, one must employ 50 or more employees. *See* 29 U.S.C. § 2611(4)(A)(i)-(ii). For Title VII to apply, a company must have 15 or more employees. *See* 42 U.S.C. § 2000e(b). However, federal courts have also recognized that an entity other than the direct employer may be held liable as a "joint employer" only if it exerted significant control over the employee. *See, e.g., Whitaker v. Milwaukee Cnty.,*

*Wisconsin*, 772 F.3d 802, 810-11 (7th Cir. 2014) ("[A]n entity other than the actual employer may be considered a 'joint employer' only if it exerted significant control over the employee. Factors to consider in determining joint employer status are (1) supervision of employees' day-to-day activities; (2) authority to hire or fire employees; (3) promulgation of work rules and conditions of employment; (4) issuance of work assignments; and (5) issuance of operating instructions." (Internal citations, quotation marks, and emphasis omitted)). *See also Moldenhauer v. Tazewell-Pekin Consol. Comms. Cntr.*, 536 F.3d 640, 644 (7th Cir. 2008) ("[F]or a joint-employer relationship to exist, each alleged employer must exercise control over the working conditions of the employee, although the ultimate determination will vary depending on the specific facts of each case.").

### *(i)    Avon Education Foundation*

The uncontested facts demonstrate that the Foundation had only one employee—Bender. One employee is insufficient for either the FMLA or Title VII to apply. Even if the Foundation were found to be a joint employer, the only allegation is that they had one potential joint employee—once again, Bender. This is still not enough to meet the necessary threshold for the FMLA or Title VII. Bender briefly argues that the integrated employment doctrine applies and dictates that Bender was employed by both the Foundation and the School. [Filing No. 94, at ECF p. 6.] However, Bender does not even attempt to demonstrate how the relevant law on integrated employment applies to her situation. Defendants note that the Seventh Circuit has significantly limited the application of integrated employment in discrimination cases, finding it only applies where a party can pierce the corporate veil, where a company has been broken up into small pieces to avoid antidiscrimination laws, or where the non-employing company directs discriminatory action by the employing company. *See Papa v. Katy Indus.*, Inc., 166 F.3d 937,

6

942 (7th Cir. 1999). Bender made no attempt to argue that any of these conditions apply, and there are no factual allegations supporting any of these circumstances. The Foundation was not created as part of the School Corporation and later broken off to avoid liability under antidiscrimination laws, nor was it created as a small entity separate from the School Corporation with the specific purpose of avoiding liability under antidiscrimination laws. [Filing No. 89-1, at ECF p. 9.] Therefore, Defendants' motion for summary judgment is granted as to the Foundation because it is not a covered employer under the FMLA or Title VII.

*(ii)    Avon Community School Corporation*

There is no dispute that the School employed enough employees to be a covered employer under both FMLA and Title VII. Rather, the question is whether the School indirectly employed Bender, as either a joint or integrated employer with the Foundation, and thus can be held liable for alleged violations of FMLA and Title VII. As with the Foundation, Bender's response only sets forth the relevant law on integrated employment but otherwise does not attempt to demonstrate how that law applied to her situation. [Filing No. 94, at ECF p. 6-7.] Thus, the integrated employer argument fails. However, whether the School Corporation employed Bender as a joint employer is a closer question that requires review of the specific facts in this case. *See, e.g., Grady v. Affiliated Computer Servs. ACS*, No. 1:13-cv-342-TWP-MJD, 2015 WL 1011355, at *4 (S.D. Ind. Mar. 4, 2015) ("The alleged employer must exercise control over the working conditions of the employee, although the ultimate determination will vary depending on the specific facts of each case.").

Bender argues that she was employed by the School because (1) she was on the School's payroll; (2) the School believed Bender to be its employee; (3) Bender had access to the School's facilities and benefit programs; (4) Bender executed forms that revealed her status as an

7

employee of the School; and (5) the School and Foundation shared employee resources and both controlled Bender's work. [Filing No. 94, at ECF p. 8-9.] Viewing the facts in the light most favorable to Bender, there is a question of fact as to whether the School employed Bender.

First, the School paid Bender's salary and benefits. Bender received W-2 federal tax forms from the School for 2017, 2018, and 2019. [Filing No. 94-1, at ECF p. 7.] However, while Bender's pay was processed through the School's payroll, the Foundation ultimately reimbursed the School for her pay. In fact, Bender, in her role as Executive Director, signed the reimbursement checks from the Foundation to the School. [Filing No. 89-1, at ECF p. 6-7.] The Foundation's tax returns, which Bender also signed in her role as Executive Director, indicate that the Foundation paid 100% of its compensation to one employee: Bender. [Filing No. 89-8.] The fact that the School had Bender on its payroll is not of itself indicative of a joint employer relationship. *See, e.g., Moldenhauer*, 536 F.3d at 645 ("Turning to the facts in this case, Moldenhauer stresses the 'laundry list' of services that Tazcom received from Pekin, including payroll and insurance providers. But, as in *Moreau*, Tazcom contracted with Pekin for the provision of those services, which is insufficient to establish a joint-employment relationship. . . . This holding is consistent with the purpose behind the small-employer exception.").[2]

Bender argues that the School believed Bender was its employee. What the School "believed" is not the question; the overarching issue, noted below, is how much control the

---

[2] Bender incorrectly claims that the School represented to the Indiana Department of Workforce Development that Bender was its employee. In making this claim, Bender cites to an Exhibit 5, which she describes as a "Representation by School to Indiana Department of Workforce Development." [Filing No. 94, at ECF p. 27.] However, Bender did not attach any Exhibit 5 or a document otherwise matching this description with her response. Defendants submitted this document to the Court, and it shows that Bender represented to the Department of Workforce Development that she worked for Avon Community School Corporation; the representation was not made by the School Corporation. [Filing No. 102-1.]

8

School had over Bender's work. In support of her argument, Bender offers the opinion of Jon Becker, counsel for the Foundation. [Filing No. 94-3.] Defendants counter that Becker's opinion, attached as Filing No. 94-3, is misrepresented, irrelevant, and inadmissible. [Filing No. 98, at ECF p. 8.] Filing No. 94-3 contains a screenshot of an email from Becker to Bender, which Bender misrepresents as an affirmation that Bender was not a Foundation employee. As Defendants point out, Becker's opinions are attorney-client privileged communications, and the client is the Foundation, not Bender. Bender may not waive that privilege, and her attempt to interject these privileged communications must be barred because the Foundation protected and did not waive the privilege.[3]

Next, Bender argues that she was employed by the School because she had access to the School's facilities and benefit programs. Bender had an office in the School's administrative building, as well as an identification badge that allowed access to the School facilities and a School email address. [Filing No. 96-1, at ECF p. 6, 9; Filing No. 94-2, at ECF p. 2.] Bender received a link to the School employee handbook and was told it would govern her employment. [Filing No. 94-2, at ECF p. 3.] The School allowed Bender to participate in its 403(b) retirement program. [Filing No. 95-1, at ECF p. 8; Filing No. 94-2, at ECF p. 2.] These facts could support a finding that the School jointly employed Bender.

---

[3] Defendants produced evidence that Plaintiff's exhibit [Filing No. 94-3] was subject to a claw-back request identifying the document as an inadvertently produced privileged communication. [Filing No. 98-3.] Defendants argue that the Court should strike the exhibit and impose appropriate sanctions. Bender made no attempt to file a sur-reply and address these allegations. The Court finds the use of this document and the misrepresentation of its contents concerning, and the lack of acknowledgment of the issues with doing so alarming. The Clerk is directed to strike Filing No. 94-3. The Court declines to impose sanctions for this inappropriate filing, other than admonishing Bender's counsel for attempting to use this obviously confidential document out of context and after failing to appropriately acknowledge the claw-back request.

Once again, however, the Court must point out that Bender's response brief contains additional misrepresentations and drafting errors. Bender claims she received training from the School but misrepresents deposition testimony from Jon Becker and Kristen Ewing that does not actually support her claim. [Filing No. 94-2, at ECF p. 2.] In fact, Becker was asked whether he was aware Bender received training by Avon Schools, and he replied, "No." [Filing No. 95-6, at ECF p. 4.] The page of Ewing's deposition cited only mentions a document listing "the training program" but otherwise provides no context for her testimony. [Filing No. 95-1, at ECF p. 11.] Bender also cites to "Becker Aff. ¶ 11," but Bender does not have any exhibit containing an affidavit from Becker. Upon closer inspection, the Court believes Bender intended to cite to *Bender's* affidavit at paragraph 11, but the Court should not have to correct counsel's errors and is under no obligation to scour the record to find the evidence intended to support an argument. *See, e.g., Greer v. Bd. of Educ. of City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001) ("[A] lawsuit is not a game of hunt the peanut. Employment discrimination cases are extremely fact-intensive, and neither appellate courts nor district courts are obligated in our adversary system to scour the record looking for factual disputes[.]" (Internal citation, quotation marks, and ellipses omitted)).

Bender also argues that she executed forms that revealed her status as an employee of the School. Bender signed a form that allowed the School to conduct a criminal background check. [Filing No. 94-2, at ECF p. 2; Filing No. 96-1, at ECF p. 8.; Filing No. 96-2, at ECF p. 1.] She also signed an information technology agreement provided by the School. [Filing No. 94-2, at ECF p. 2; Filing No. 95-1, at ECF p. 4.] However, while Bender claims the form identified her as a School employee, it appears Bender wrote "AEF" in a blank spot on the form, an obvious reference to the Foundation, not the School. [Filing No. 96-3, at ECF p. 1.] Moreover, forms

10

used by the School to process Bender's pay and grant her access to the computer network disavowed that she was an employee of the School Corporation.[4]

Finally, Bender argues that the School and Foundation shared employee resources and both controlled her work. As an example of shared resources, Bender cites evidence that a School receptionist distributed fundraising tickets for a Foundation event. [Filing No. 96-1, at ECF p. 12.] This sort of overlap could support finding that the School and the Foundation shared resources.

However, Bender describes the following three factual claims as "the most telling facts related to control," and the Court notes concerns with all of them. First, Bender claims, as evidence that the School controlled her work, that she received emails directing her to clock in and adjust her hours. [Filing No. 94, at ECF p. 10.] Yet Bender testified that she did not clock in. [Filing No. 89-1, at ECF p. 17.] One of the emails, which was sent to many employees, stated:

> About a dozen of us indicated interest in hearing the beautiful AHS Choir. They will sing at Rotary first and should arrive about 7:40ish. Since ALL CALL isn't working you may just want to come to the Board room and/or we will spread the word. Having attended the Madrigal Dinner last night, I can tell you that you are in for a wonderful treat. If your hours start later and you wish to join us, please clock in so you are compensated when you are here.

[Filing No. 89-14, at ECF p. 1.] This email very clearly is not a direction to Bender to clock in. Rather, it related to an event and included a reminder to clock in that was only applicable to time-clock employees. Second, Bender argues that Dr. Hoernemann specifically directed

---

[4] For example, the form entitled "Support Staff Request to Hire" includes the following added language: "This is only to activate Technology and Payroll. Not an actual ACSC Employee." [Filing No. 89-9.] Another form, titled "Certified Staff-New Hire/Transfer" contains notations stating "Non-ACSC employee" and "N/A" next to designations for applicable organizational chart and leave approver. [Filing No. 89-10.]

11

Bender's termination. [Filing No. 94, at ECF p. 10.] However, Bender overstates Dr. Hoernemann's testimony and relies on a draft termination letter. [Filing No. 89-7, at ECF p. 12-14.] Third, Bender claims that the first individual Sommers notified that he had placed Bender on administrative leave was Dr. Hoernemann. [Filing No. 94, at ECF p. 10.] Once again, however, Bender cites to an exhibit Bender did not provide the Court.

Bender plays fast and loose with some evidence and facts, and many of Bender's arguments are unpersuasive or misleading. Nevertheless, the facts viewed in the light most favorable to Bender present at least a question of fact as to whether the School could be considered Bender's "employer" for purposes of FMLA and Title VII. Thus, the Court must address the underlying claims.

### B. Request for FMLA Leave

Even assuming the School jointly employed Bender, there is an obvious issue with her underlying claims: Bender never requested, and thus was not denied, FMLA leave. There is no dispute that Bender did not directly seek FMLA leave. Rather, Bender argues:

> In this case, questions of fact preclude the Court from entering summary judgment in Defendants' favor on Bender's FMLA claim. Although it is true that Bender may not have specifically referenced the FMLA in her requests to the School and to the Foundation for accommodations, she was not required to cite the statute to take advantage of the statute's benefits.

[Filing No. 94, at ECF p. 15.]

The Seventh Circuit described the shifting responsibilities of employees and employers under the FMLA in *Lutes v. United Trailers, Inc.*, 950 F.3d 359, 364 (7th Cir. 2020):

> The FMLA entitles an eligible employee to take up to twelve work weeks of leave when the employee has a serious health condition that renders him unable to perform his position. It is unlawful for an employer to interfere with an employee's attempt to exercise his FMLA rights.

12

> The employee and the employer have shifting responsibilities under the FMLA. Where the need for leave is unforeseeable, . . ., the employee must provide notice of his intent to take leave to the employer as soon as practicable under the circumstances. The notice must provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request. Such notice may include a that a condition renders the employee unable to perform the functions of the job.

(Internal citations and quotation marks omitted). *Lutes* also notes that "[t]he employee does not, however, need to be aware of his FMLA rights to invoke them: '[t]he employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed.' " *Id*.

Thus, the problem is not that Bender failed to mention the FMLA, but even more straightforward: she did not request leave. Rather, she presented the Foundation with a doctor's note that said: "Pt. shouldn't be working more than 40 hours per week on a routine basis." [Filing No. 94-5, at ECF p. 1.] Bender argues that "[r]ather than accommodate Bender's need for time off, the Foundation increased her hours and demanded that she work sixty (60) to eighty (80) hours per week." [Filing No. 94, at ECF p. 15.] In support, she cites to paragraphs 26 and 41 her affidavit. A review of the cited evidence provides no support for the claim that the Foundation increased her hours and demanded she work 60 to 80 hours per week. Rather, at paragraph 26 of her affidavit, Bender complained generally that she faced a work culture that "emphasized forced overtime and lack of support." [Filing No. 94-2, at ECF p. 5.] And at paragraph 41, she described an email exchange with Jamie Turner where Bender informed Turner that she was already over 45 hours for the week and had planned to take the day off. [Filing No. 94-2, at ECF p. 6.] Neither of these statements supports the claim that Bender's employer demanded she work 60 to 80 hours.

13

On the contrary, during her employment with the Foundation, Bender self-reported working 30 hours per week. [Filing No. 89-1, at ECF p. 4.] While Bender alleged in her complaint that board members demanded she work 60 to 80 hours per week, she has provided no evidence supporting this claim. And the Foundation claims it neither demanded nor expected Bender to work more than 40 hours per week. [Filing No. 67, at ECF p. 5; Filing No. 89-3, at ECF p. 16.] Even assuming all of the facts as Bender presents them as true, Bender still has not set forth any evidence that she requested FMLA leave.

Moreover, after receiving the doctor's note in question, the Foundation attempted to help meet the restrictions contained in the note. Yet Bender resisted those efforts, describing the Foundation's response as micromanagement. After receiving Bender's doctor note, the Foundation asked Bender to keep track of her hours and report when she reached 30 hours in a week. [Filing No. 89-1, at ECF p. 14-15.] A few days later, the Foundation provided Bender with a more detailed plan, including tracking hours in the office, providing a list of appointments to determine whether board members could cover any, sharing passwords with board members so they could provide assistance, limiting time on an upcoming grant revision project, turning a project over to interns, documenting vacation days, listing short and long term priorities, and limiting work to weekdays. [Filing No. 89-27, at ECF p. 1-3.] Bender responded to this message by expressing her appreciation in the Foundation's efforts to be mindful of her hours and noted that her hours should be "normalizing" over the next couple months. [Filing No. 89-27, at ECF p. 1.] However, in her deposition, she described the requests that she track her hours, keep a calendar, and work regular office hours as "abusive." [Filing No. 89-1, at ECF p. 35-36.]

In addition to not requesting leave, Bender has not set forth evidence that she was afflicted with a "serious health condition" that rendered her unable to perform the functions of

14

her position, as required by 29 U.S.C. § 2612(a)(1)(D). *See, e.g., Stevenson v. Hyre Elec. Co.*, 505 F.3d 720, 727 (7th Cir. 2007) ("Providing notice is not enough to receive FMLA benefits. An employee must also have . . . a serious health condition. The FMLA itself defines a serious health condition as an illness, injury, impairment, or physical or mental condition that involves— (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." (Internal citations and quotation marks omitted)). Bender has failed to set forth any genuine issue of fact related to a serious health condition that rendered her unable to perform her position. She also never stated to her employer that she was unable to perform her position. At best, she presented a note saying that she should not work overtime regularly. This evidence does not identify a serious health condition as required by the FMLA. *See, e.g., Guzman v. Brown County*, 884 F.3d 633, 638-39 (7th Cir. 2018) ("Here, it is not altogether clear that Guzman suffered from sleep apnea in 2013. . . . Even if Guzman did suffer from sleep apnea, . . . she has offered no evidence that she received inpatient care for that condition or was subject to continuing treatment for that condition at the time of her leave request. To the contrary, she concedes that she was not seeing any medical professional for her sleep apnea and had thrown away her CPAP machine. Guzman has accordingly failed to introduce any evidence capable of establishing that she suffered from a serious health condition under the FMLA." (Internal citations and quotation marks omitted)).

Finally, because Bender did not request FMLA leave, her employer could not have retaliated against her for such request. Moreover, as noted above, Bender did not dispute the facts Defendants set forth showing that Plaintiff was fired for her own unprofessional behavior. As noted above, Bender referred to people as "shitheads" in communication with a Foundation board member; repeatedly made disparaging comments about Foundation board members;

15

insinuated that a board member bribed another member; described her interactions with Foundation board members as "amateur hour"; and misrepresented her relationship with a potential Foundation board member. The Foundation's stated reason for firing Bender was a loss of confidence in her as a result of her unprofessional conduct. Thus, since Bender has admitted that the basis for her termination was not pretextual, she is not entitled to relief for purported retaliation. Accordingly, Defendants' motion for summary judgment is granted as it relates to Bender's claims for FMLA violations and retaliation on the basis of seeking FMLA leave.

### C. Discrimination based on gender

Bender also alleges that she was discriminated against based on her gender. [Filing No. 67, at ECF p. 7.] Defendants argue that the only gender-related action Bender identified was a single comment by Sommers, when he said he was embarrassed when a woman worked on his car. Defendants contend that the facts demonstrate Bender was terminated, not because of her gender, but because of her behavior. [Filing No. 89, at ECF p. 29.] Bender, by contrast, claims that questions of material fact preclude the Court from entering summary judgment in Defendants' favor on this claim. [Filing No. 94, at ECF p. 19.] However, since Bender failed to properly dispute the facts presented, nothing material remains in dispute. In addition, while Bender provides a laundry list of bullet points attempting to support her gender discrimination claim, only two of the 13 points on the list relate to gender at all. [Filing No. 94, at ECF p. 21-22.] The remainder of her bullet points simply summarize complaints regarding interactions with former board member Angela Lee.

Bender has not demonstrated any link between the treatment she received and her sex, as required to make a prima facie case under Title VII. *See, e.g., Purtue v. Wisc. Dep't of Corr.*, 963 F.3d 598, 602 (7th Cir. 2020) ("When a defendant moves for summary judgment, the

16

'singular question' for the district court is whether the plaintiff has introduced evidence that would permit a reasonable factfinder to conclude that the plaintiff's . . . sex . . . caused the discharge or other adverse employment action."). For instance, Bender claims she was required to work 60 to 80 hours per week, which was more than any other employee. [Filing No. 94, at ECF p. 20.] However, Bender does not attempt to connect her claim that she had to work more than anyone to her gender. Similarly, she states that board members (specifically, Lee) screamed obscenities at her during meeting. Even assuming that is true, Bender has described an unenjoyable work environment, but her allegation does not connect in any way to gender-based discrimination. Bender made no attempt to show that the treatment she allegedly endured at the Foundation was somehow connected with Sommers's statement relating to a woman working at AutoZone. *See, e.g., Overly v. KeyBank Nat. Ass'n*, 662 F.3d 856, 865 (7th Cir. 2011) ("[T]here is a general lack of other circumstantial evidence from which to infer that any of Bielecki's conduct—such as his reassigning of Overly's territories, temporarily being denied access to client accounts, or reporting her to the compliance office—was the result of intentional, gender-based discrimination. The only alleged, gender-related comment was Bielecki calling Overly 'cutie,' something by all accounts he stopped when told she did not like its use. Moreover, its use is not linked to or contemporaneous with any adverse employment action."); *O'Neal v. City of Chicago*, 588 F.3d 406, 411 (7th Cir. 2009) ("O'Neal fails on her sex discrimination claim for the same reason as her retaliation claim: she failed to adduce any evidence indicating that her actionable transfers were because of her sex.").

Furthermore, once again, Bender did not contest Defendants' allegation that the Foundation terminated her due to her unprofessional behavior. As discussed in relation to Bender's FMLA claim, by not disputing the facts presented indicating that the Foundation fired

17

Bender because of her unprofessional actions, disparaging comments, and their general lack of confidence in her ability to complete her role in a professional manner, Bender has admitted that the basis for her termination was not pretextual. Thus, the record does not contain sufficient evidence to permit a reasonable fact finder to conclude that Bender was fired in retaliation for her gender or an otherwise protected activity. *See, e.g., Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018) ("To prevail on a Title VII retaliation claim, the plaintiff must prove that (1) [she] engaged in an activity protected by the statute; (2) [she] suffered an adverse employment action; and (3) there is a causal link between the protective activity and the adverse action."); *Khungar*, 985 F.3d at 578 ("The question is: 'Does the record contain sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused the discharge?' " (Internal citation and quotation marks omitted)). Therefore, Defendants' motion for summary judgment is granted as it relates to Bender's claims of Title VII discrimination and retaliation.

## IV. Conclusion

The Foundation is not an employer under either FMLA or Title VII. And while there are disputed facts as to whether the School could be considered Bender's employer for FMLA or Title VII purposes, there are no genuine issues of material fact regarding these underlying claims. Bender never requested FMLA leave, and she was not discriminated against based on her gender. Rather, the undisputed facts show that she was terminated because of her own unprofessional behavior. Accordingly, the Clerk is directed to strike Filing No. 94-3, and Defendants' joint motion for summary judgment is granted. [Filing No. 85.]

Date: 7/13/2021

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email